UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL T.,

            Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

**DECISION AND ORDER**

6:23-CV-06251 EAW

## INTRODUCTION

Represented by counsel, plaintiff Daniel T. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 10) and Plaintiff's reply (Dkt. 11). For the reasons discussed below, Plaintiff's motion (Dkt. 6) is denied and the Commissioner's motion (Dkt. 10) is granted.

## BACKGROUND

Plaintiff protectively filed his application for DIB on July 19, 2018. (Dkt. 3-3 at 3, 16).[1] In his application, Plaintiff alleged disability beginning August 2, 2018. (*Id.* at 3;

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

Dkt. 3-2 at 16).

Plaintiff's application for DIB was initially denied on October 4, 2018. (Dkt. 3-2 at 16; Dkt. 3-4 at 7-18). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Sujata Rodgers, who issued an unfavorable decision on April 14, 2020. (Dkt. 3-2 at 13-80). Plaintiff requested Appeals Council review; his request was denied on June 19, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 2-7). Plaintiff filed an action in this District, and on March 30, 2022, the Hon. Charles J. Siragusa entered a Decision and Order remanding the matter to the Commissioner for further administrative proceedings. (Dkt. 3-9 at 39-61).

On remand, the Appeals Council entered an order requiring the ALJ to offer Plaintiff the opportunity for a new hearing, take any further action needed to complete the administrative record, and issue a new decision. (Dkt. 3-9 at 64). The ALJ held a hearing on November 9, 2022, and February 1, 2023. (Dkt. 3-8 at 40-85). On March 8, 2023, the ALJ issued an unfavorable decision. (*Id.* at 2-39). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2023. (Dkt.

3-8 at 7). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 2, 2018, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of post-traumatic stress disorder ("PTSD"), depressive disorder, anxiety disorder, arrythmias, and obesity. (*Id.* at 8). The ALJ further found that Plaintiff's medically determinable impairments of hypertension and migraine headaches were non-severe. (*Id.* at 8-9).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 9). The ALJ particularly considered the criteria of Listings 4.02, 11.17, 12.04, 12.06, and 12.15, as well as the effects of Plaintiff's obesity, in reaching her conclusion. (*Id.* at 9-12).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), with the following additional nonexertional limitations:

> [Plaintiff] could understand, remember, and carry out simple instructions for two-hour increments over an eight-hour workday and a forty-hour workweek. [Plaintiff] could tolerate occasional interaction with coworkers, supervisors, and the general public. [Plaintiff] could adapt to simple changes in workplace routine. [Plaintiff] would be off task for ten percent of the workday.

(*Id.* at 12). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 30).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could have

performed, including the representative occupations of hand packager, industrial cleaner, and store laborer. (*Id.* at 30-31). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 31).

II. **The ALJ's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to vacate the ALJ's decision and remand this matter for calculation and payment of benefits, arguing that the ALJ failed to properly consider the opinion of medical expert Ira Hymoff, Ph.D., at step three and when determining Plaintiff's RFC. (Dkt. 6 at 2). The Court is unpersuaded by this argument, for the reasons that follow.

Dr. Hymoff testified at the hearing on February 1, 2023. Dr. Hymoff opined that Plaintiff had an anxiety-related disorder, consisting of "primarily generalized anxiety and panic symptoms." (Dkt. 3-8 at 65). Dr. Hymoff noted that Plaintiff had been diagnosed with major depressive disorder, but opined that this diagnosis was "not as well documented." (*Id.*). Dr. Hymoff opined that the reference to PTSD "was not really developed in the record." (*Id.*).

When questioned by the ALJ as to whether Plaintiff "meets or equals any of the listings in the Commissioner's Listings of Impairments," Dr. Hymoff first opined that the paragraph A criteria[2] were satisfied for Listing 12.06. (*Id.*). As to the paragraph B criteria,

---

[2] "When a claimant alleges a mental impairment, the Commissioner's regulations require the ALJ to apply a 'special technique' at the second and third steps of the five-step evaluation process." *Alison B. v. Comm'r of Soc. Sec.*, No. 1:21-CV-0969 (CJS), 2023 WL 2726373, at *3 n.5 (W.D.N.Y. Mar. 31, 2023); *see* 20 C.F.R. § 404.1520a. "First, the ALJ must evaluate the claimant using 'Paragraph A' criteria to evaluate the claimant's pertinent symptoms, signs, and laboratory findings and determine whether he or she meets the requirements of one of the mental impairments" included in the Listings. *Alison B*, 2023 WL 2726373, at *3 n.5. "If the claimant does have such an impairment, the ALJ must

- 6 -

Dr. Hymoff opined that it was "a little hard to assess," but that: (1) "understanding, remembering and applying information would be mild to moderate"; (2) "[i]nteraction with others, . . . that's moderate, at times marked"; (3) "[c]oncentration, persistence, and pace . . . I would say is marked"; and (4) "adapt and manage oneself . . . is moderate." (*Id*. at 65-66). The ALJ asked the follow up question, "[s]o then, would not meet or equal that listing. Is that your testimony?" (*Id*. at 66). Dr. Hymoff responded, "[y]es, I believe so. Yes." (*Id*.).

The ALJ then asked Dr. Hymoff what functional limitations Plaintiff would have with respect to his ability to work. (*Id*.). Dr. Hymoff responded that Plaintiff had "no problem with understand[ing] and remember[ing] instructions," but that there "may be problems . . . in attendance" and "some difficulties in maintaining regular attendance and being punctual within customary tolerances." (*Id*. at 66-67). Dr. Hymoff opined that Plaintiff would not have any problems with interpersonal relations, except that he might need to remove himself from a social situation if he had an "intrusion of panic symptoms." (*Id*. at 67). Dr. Hymoff indicated that there should be only "modest or occasional changes in work expectations" and that Plaintiff might need "a break every three or four hours." (*Id*.).

---

assess the claimant's limitations in four broad areas of mental functioning that constitute the Paragraph B criteria: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself[.]" *Id*. "The ALJ must rate the degree of the claimant's limitation in each of the Paragraph B criteria using a five-point scale: none, mild, moderate, marked, or extreme. The ALJ must rate the degree of the claimant's limitation in each of the Paragraph B criteria using a five-point scale: none, mild, moderate, marked, or extreme." *Id*. (citations omitted).

When the ALJ asked a follow up question regarding "how much time [Plaintiff] might need to be off-task or how many absences might be necessary," Dr. Hymoff responded that Plaintiff would be off task "around 10 percent of the time" and that he was doing well in his current job but that in past jobs (prior to 2018), he had been absent "two or three times a month." (*Id*. at 67-68).

Plaintiff first argues that the ALJ erred because she did "not address Dr. Hymoff's listing level opinion in laying out her evaluation of the criteria at Step Three." (Dkt. 6 at 7-8). "Plaintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009), *adopted*, 614 F. Supp. 2d 252 (N.D.N.Y. 2009). "An ALJ is required to provide an explanation as to why the claimant failed to meet or equal the Listings, where the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Petranella P. v. Comm'r of Soc. Sec.*, No. 6:21-CV-06172 EAW, 2023 WL 2154768, at *3 (W.D.N.Y. Feb. 22, 2023) (quotations omitted). "However, even the absence of an express rationale for an ALJ's step three conclusion does not prevent a reviewing court from upholding the determination so long as the court is able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Jan S. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1674 (WBC), 2021 WL 1339455, at *4 (W.D.N.Y. Apr. 9, 2021) (quotation omitted).

Plaintiff's step three argument is premised on a factual inaccuracy. Plaintiff asserts that Dr. Hymoff "explicitly opined that Plaintiff met the criteria of Sections A and B for

listing 12.06." (Dkt. 6 at 7). This is incorrect. As set forth above, when asked by the ALJ about the paragraph B criteria, Dr. Hymoff did not identify one extreme or two marked limitations. Instead, he identified one marked limitation, one "primarily moderate" but "at times marked" limitation, one moderate limitation, and one "mild to moderate" limitation. (*See* Dkt. 3-8 at 65-66).³ And when asked by the ALJ whether Plaintiff "would **not** meet or equal" the criteria of Listing 12.06, Dr. Hymoff replied, "[y]es, I believe so. Yes." (*Id*. at 66 (emphasis added)). In other words, Dr. Hymoff's opinion is ultimately consistent with the ALJ's conclusion that Plaintiff does not meet or equal the criteria of Listing 12.06. Accordingly, the ALJ's failure to discuss Dr. Hymoff's opinion at step three is at most a harmless error.

The ALJ also explained at length her conclusion that Plaintiff did not satisfy the paragraph B criteria, relying on Plaintiff's hearing testimony, the extensive treatment records, and other medical opinions within the record. (*Id*. at 9-12). Plaintiff has not articulated any error in the ALJ's consideration of these aspects of the record. The Court does not find any reversible error in the ALJ's step three analysis.

---

³ Plaintiff acknowledges this in his brief, stating that Dr. Hymoff "assessed Plaintiff with a mild to moderate limitation in his abilities to understand, remember, or apply information; moderate limitation in his ability to interact with others, noting that when Plaintiff's panic symptoms become involved, the limitation is marked; marked limitation in his ability to concentrate, persist and maintain pace; and moderate limitation in his ability to adapt and manage himself." (Dkt. 6 at 7). Plaintiff cites no authority for the proposition that a primarily moderate but at times marked limitation is the equivalent of a marked limitation. *See, e.g., Davison v. Colvin*, 596 F. App'x 675, 678 (10th Cir. 2014) (finding that "the medical opinion evidence states that [the plaintiff] did not meet the Paragraph B criteria" where the ALJ concluded that the plaintiff had "moderate to marked difficulties with regard to concentration, persistence, or pace" and his "concentration, persistence, or pace were markedly impaired when he experienced an acute psychosis, but . . . he had at most moderate limitations once he recompensated").

Plaintiff next argues that the ALJ erred in assessing Dr. Hymoff's opinion while assessing Plaintiff's RFC.  In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).   "[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  When a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections.  *Id*.  Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  *Id*. at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency.  *Id*. at §§ 404.1520c(a), 416.920c(a).  With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support

his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id*. at §§ 404.1520c(b), 416.920c(b). Specifically, the ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may—but is not required to—explain how she considered the remaining factors. *Id*.

Plaintiff argues that the ALJ did not explain how she considered the supportability and consistency factors for Dr. Hymoff's opinion. The Court disagrees. The ALJ found Dr. Hymoff's opinion partially persuasive, and largely adopted the functional limitations that he identified. The ALJ explicitly considered the supportability of Dr. Hymoff's opinions, explaining that Dr. Hymoff "had access to a full longitudinal view of the medical evidence of record," placing him "in a strong position to evaluate [Plaintiff's] work-related abilities and limitations." (Dkt. 3-8 at 29). The ALJ agreed with Dr. Hymoff that the evidence of record demonstrated that Plaintiff's "biggest issues would be the ability to maintain attendance without being disrupted at a given job," but concluded that these issues

could be addressed by a limitation "supporting the need to be off work task for up to ten percent of an average workday." (*Id*.). The ALJ explained that to the extent Dr. Hymoff's testimony could be "interpreted as indicative of greater limitations," the ALJ found such greater limitations "inconsistent with the claimant's history of conservative and partially effective mental health treatment, his largely benign findings upon baseline mental status examination, and his reasonable range of reported daily activities." (*Id*.). In other words, the ALJ departed from Dr. Hymoff's opinion only insofar as she determined that Dr. Hymoff's opinion was not consistent with the other evidence of record, for reasons that she set forth in her decision.

Plaintiff argues that the ALJ's explanation for partially departing from Dr. Hymoff's opinion was insufficiently detailed. But that is true only if one ignores the rest of the ALJ's opinion, where she discusses at length the history of Plaintiff's mental health treatment, explaining that "beginning in November 2018 treatment notes consistently indicate improvement in symptoms of anxiety and depression." (*Id*. at 26). Indeed, as the ALJ noted, treatment notes from January 2019 state that Plaintiff has not had any panic attacks since his medication was adjusted, while treatment notes from May 2019 state that his medications have been effective in controlling his anxiety and panic disorder. (Dkt. 3-7 at 442, 461). Dr. Hymoff tied his opinion regarding Plaintiff's need to be absent from work to his panic symptoms (Dkt. 3-8 at 67), but the ALJ reasonably concluded that Plaintiff's panic symptoms were largely controlled by his mental health treatment. On these facts, the Court cannot conclude that the ALJ erred in finding the medical evidence of record inconsistent with the more severe absence limitations opined to by Dr. Hymoff.

Plaintiff also argues that Dr. Hymoff's opinion regarding absences was consistent with the opinion of treating nurse practitioner ("NP") Monifi Osmen, and that the ALJ gave inadequate consideration to this fact. (Dkt. 6 at 11). But prior to assessing Dr. Hymoff's opinion, the ALJ had concluded that NP Osmen's opinion was unpersuasive, because it was inconsistent with her own treatment records. (Dkt. 3-8 at 29). Having reached such a conclusion, it was reasonable for the ALJ not to find the consistency between NP Osmen's opinion and Dr. Hymoff's opinion of particular note.

Plaintiff further points to various evidence in the record that he contends supports Dr. Hymoff's opinion, arguing that the ALJ should have credited it in full. But in reviewing the Commissioner's determination, the Court is not called upon to review the evidence *de novo* or to ascertain the best interpretation thereof. "If [the] evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). The Court does not find that the only rational interpretation of the evidence in this case was that Plaintiff had more significant limitations than determined by the ALJ. Plaintiff's disagreement with the manner in which the ALJ considered and weighed the evidence of record is not a basis for remand, nor does the Court find any other reason to disturb the Commissioner's determination.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 13, 2024
       Rochester, New York